1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

8

Timothy Paul Olmos,
Plaintiff
-vs-
Charles L. Ryan, et al.,
Defendants.

CV-17-3665-PHX-GMS (JFM)

9
10

**Order**

11       Under consideration is Plaintiff's Motion to Compel filed September 23, 2019 (Doc.

12   120), supported by his Memo in Support (Doc. 121).

13       Pursuant to Federal Rules of Civil Procedure 36(a)(6) and 37(a)(3)(B) and Local

14   Rule of Civil Procedure 27.1(a), Plaintiff seeks an order determining the sufficiency of

15   Defendants' responses to requests for admission and compelling responses to Plaintiffs'

16   various discovery requests.  (Plaintiff makes widespread references back to earlier motions

17   and exhibits, including his Motion to Modify Scheduling Order (Doc. 64), Motion for an

18   Order to Show Cause (Doc. 75), and Motion to Modify Scheduling Order (Doc. 82).)

19       Defendants have responded (Doc. 137) arguing that the responses were appropriate,

20   Plaintiff' objections are irrelevant, and the requests are disproportional to the needs of the

21   case given the amount in controversy and the burden vs. benefit of the requests.  Plaintiff

22   did not timely reply, and the request for an extension has been denied.  (*See* Order 3/13/20,

23   Doc. 159 (denying extension); Order 4/9/20, Doc. 167 (affirming order).)

24
25   **A.  BACKGROUND**

26       Plaintiff filed his First Amended Complaint ("FAC") (Doc. 18) on April 20, 2018.

27   Counts One, Three, Four, Five, and Six of Plaintiff's FAC were dismissed without

28   prejudice on January 18, 2018 (Doc. 21), leaving Counts Two and Seven remaining.

1    Charles Ryan, former director of the Arizona Department of Corrections, is the sole
2    remaining defendant.

3         In **Count Two**, Plaintiff claims his Fifth and Fourteenth Amendment due process
4    rights were violated because he has never been paid **interest earned on his prison trust**
5    **account**.  Plaintiff claims there "is no pre- or post-deprivation remedy under state law
6    applicable to Ryan's taking, no hearings are provided, no appeal process is available, no
7    dispute process is applicable, and no other meaningful process is available to challenge
8    A.R.S. § 41-1604.03(B)(2) and that collection of the interest violates his due process
9    rights.  In **Count Seven**, Plaintiff claims his Eighth Amendment rights are violated because
10   Defendant Ryan only provides **hygiene supplies** to inmates whose spendable trust account
11   balances are less than $12.00 per month.  Plaintiff claims this creates financial hardships
12   for him and that he must choose between purchasing hygiene items or purchasing legal
13   materials.  Specifically, Plaintiff alleges that he is unable to afford to regularly replace his
14   toothbrush or purchase shaving cream, razors, shampoo, and deodorant.

15        In the meantime, on or about August 19, 2019, Plaintiff was released from the
16   Arizona State Prison.  (Notice of Change of Address, Doc. 104.)

17        Defendant does not argue with the basic facts alleged by Plaintiff.  On Count Two,
18   Defendant asserts that the prison system's expenses on Plaintiff exceed the interest he
19   would earn from his Inmate Trust Account, precluding a finding of a taking.   As to Count
20   Seven, Defendant contends that Plaintiff could afford the necessary hygiene items, and
21   thus cannot prove any violations of the Eighth Amendment.

22        Important to the discussion on discovery relating to Count Two is the amount at
23   issue.  Defendant points to the applicable two year statute of limitations and argues: "For
24   the two years prior to his Complaint, the interest on Mr. Olmos's inmate trust account will
25   not exceed $20, and will more than likely not exceed $10."  The Court has nothing before
26   it to conclude otherwise.

27        **Discovery Requests** – Plaintiff has served on Defendant two sets of interrogatories
28   (1stINT, 2ndINT), four sets of requests for production (1stRFP, 2ndRFP, 3rdRFP, 4th RFP)

and a set of requests for admissions (RFA).  Plaintiff challenges the responses to:

(a) RFA numbers 1 and 4 thru 6  **OR 7????**,

(b) 1stINT number 1, 2(a), 2(b)(iv), 2(b)(vi)-(x), 3, and 5;

(c) 1stRFP numbers 1-3, 5, and 6;

(d) 2ndRFP numbers 1 and 2;

(e) 3rdRFP numbers 2 and 3;

(f) all of 4thRFP;

(g) all of 2ndINT.

Defendants have generally responded to these requests, albeit often with objections.

## B.  APPLICABLE LAW

"Parties may obtain discovery regarding any **nonprivileged** matter that is **relevant** to any party's claim or defense and **proportional** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.."   Fed. R. Civ. P. 26(b)(1) (emphasis added).

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D.Cal.,2002).

To avoid discovery, a party must assert their specific objections in response to the request, and argue them in response to a motion to compel.  "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).  Similarly, in evaluating a motion to compel, the Court does not rely on objections raised only in the response to the discovery request. *See Cotracom Commodity Trading*

*Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999) ("When ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon in response to the motion. It generally deems objections initially raised but not relied upon in response to the motion as abandoned.").

## C.  APPLICATION TO DISCOVERY
## 1.  INTERROGATORIES

### a.   1stINT-1

First interrogatory 1 asked:

> Monthly totals for the following categories of information, beginning from the month that the ADC indigent program was implemented to present:
> a. Total ADC prisoner population (i.e., state-run and contract beds facilities); and
> b. Number of indigents.

Defendant responded:

> See STATE-000000008 and STATE-000000009 (Indigent Count).

In the attached exhibit STATE-000000008, Defendant provided monthly indigent counts for April 2018 through December 2018.   In STATE-000000009, Defendant provided monthly inmate accounts for January 2012 through December 2018.

Plaintiff argues the response is incomplete because the relevant time frame extends back to September 5, 2000, referencing Exhibit H to Doc. 75, the effective date of the program.   Plaintiff argues that under Fed. R. Civ. Proc. 33(b)(4) Defendant failed to adequately preserve an objection to the temporal scope of the request.  To make the point, Plaintiff references Exhibit D to Doc. 64, where Defendant raised a specific objection to a request for production based on an overbroad scope of time.  Plaintiff further argues that the response provided indicates the information is readily available. (Motion at ¶¶ 3-7.)

Defendant responds by asserting for the first time objections that the requested information is **irrelevant** and **disproportional**.  Defendant's relevance objection is based on the limited nature of Plaintiff's claim (his own lost interest), and the disproportionality objection is based on the limited relevant time given the applicable statute of limitations.

1   Defendant has waived his objections by failing to raise them in his response to the

2   discovery. *Richmark Corp.*, 959 F.2d at 1473.  "Any ground not stated in a timely

3   objection is waived unless the court, for good cause, excuses the failure."  Fed. R. Civ.

4   Proc. 33(b)(4).  "Generally, in the absence of an extension of time or good cause, the

5   failure to object to interrogatories within the time fixed by Rule 33, FRCivP, constitutes a

6   waiver of any objection."  *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981).

7   Defendant proffers no good cause to excuse the failure to timely object, and the Court

8   finds none.

9   Nonetheless, Federal Rule of Civil Procedure 26(b)(2)(C) directs the Court to limit

10  discovery *sua sponte* in certain circumstances:

> C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>    (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>    (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>    (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

17  This Rule has been applied to address improper discovery where the respondent had

18  waived objections by failing to raise them.  *See Osborn v. Bartos*, CV-08-2193-PHX-

19  ROS(JRI), 2010 WL 3809847, at *10 (D. Ariz. Sept. 20, 2010).  The last portion

20  (subsection (iii)) of Rule 26(b)(2)(C) references Rule 26(b)(1).  That Rule requires

21  consideration of privilege, relevance and proportionality.

22  The Court does not understand the application of Rule 26(b)(2)(C) to be a substitute

23  for timely objections.  Rather it is a limit on discovery plainly outside the scope of

24  discovery.  "Even where the court deems the party's discovery objections to have been

25  waived, it has the discretion to decline to compel production where the request far exceeds

26  the bounds of fair discovery."  *Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.*,

27  2007 WL 1726558, at *4 (D. Nev. June 11, 2007).  This strikes a balance between the

28  judicial inefficiency of having to address discovery disputes the parties have failed to

appropriately address, and the inefficiency of requiring compliance with plainly improper discovery requests.  It calls on the Court to act only where there is no fair argument in favor of the discovery.

Here, the Court is not convinced that the only relevant records relate to Plaintiff and the limitations period.  Defendant's defense on the interest account claim is to compare costs and revenue.  It is not clear to the Court whether Defendant contends that the relevant costs are all costs relative to Plaintiff's incarceration, only costs related to the maintenance of the inmate trust accounts, only costs relevant to indigent inmates, or costs relevant to all inmates.  The applicable statutes and regulations reflect that the funds are used for buildings and other expenses unconnected to the individual inmate.[1]  While this might seem to suggest that per inmate costs are irrelevant because there is in fact no offset made under statute, Defendant has maintained reliance on offsets.  Accordingly, the Court must presume at this junction that such costs remain relevant.

If the expenses paid from the moneys is not individualized, then knowing the number of affected inmates may be relevant to determining a per inmate cost, even if the fund overall generates no net income.  *See Schneider v. California Dep't of Corr.,* 345 F.3d 716 (9th Cir. 2003) (discussing method of determining taking of interest earned on funds held in common accounts); *Brown v. Legal Found. of Washington*, 538 U.S. 216 (2003) (same); and *Roop v. Ryan,* 2013 WL 3155402, at *4 (D. Ariz. June 20, 2013) (applying *Schneider* to Arizona's ITAs and special services fund).   And, there is no suggestion that the only relevant comparison of costs and income is month-by-month or even year-by-year.  Few operations have uniform expenses on such a basis.  And records relevant to

---

[1] The current version of ADOC's Department Order 905 provides: "Interest earned on the investment of inmate trust funds shall be deposited in the Special Services Fund in accordance with Department Order #303, Bank Accounts."  ADOC DO 905 ¶ 1.8, available at https://corrections.az.gov/sites/default/files/policies/ 900/0905_110119.pdf, last accessed 4/14/20.  *See also* Ariz. Rev. Stat. § 41-1605.  Arizona statute provides that the Special Services Fund is used for "department of corrections building renewal" and expenditures on the general prison population for such things as the "benefit, education and welfare of committed offenders," and "technologies and programs for inmate use." Ariz. Rev. Stat. § 41-1604.03.

years outside the limitations period may be relevant to show disproportionate expenses (either up or down) in the two years within the limitations period.  On the other hand, Plaintiff proffers no explanation why records from twenty years ago are relevant to the claims.  Rather, the Court finds that records dating no more than three years prior to the limitations period, *i.e.* prior to October 2012, or four months after Plaintiff's release, *i.e.* after December 2019, are beyond the bounds of fair discovery.

The Court finds no basis to conclude that the request is beyond the fair bounds of proportionality.  Although the gain to Plaintiff (as a solo complainant) from winning this case may be small, the costs to Defendant could be substantial to the extent that there are presumably significant numbers of similarly situated inmates, and recently as much as $289,295.65 in annual income being derived from the system Plaintiff attacks.  (*See* Response, Doc. 137, Exh. B, attachment State-00000003.)  Although Plaintiff has not brought a class action (and thus those other prisoners will not join in any judgment), Plaintiff's claim may nonetheless have the same effect on Defendant by forcing Defendant to litigate the propriety of the use of the interest on inmate trust account funds, and establishing a precedent relevant to the claims of other prisoners and potentially disposing of claims of qualified immunity if reviewed on appeal.   Thus, for Plaintiff the amount at issue may be only $10.  For Defendant (or his agency), however, the amount at issue could be $500,000 or more.

Further, a leading treatise observes:

> The Committee Note to the 2015 amendments explains that "monetary stakes are only one factor, to be balanced against other factors." As the Committee Note observed in 1983, "many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved."

Richard L. Marcus, *Relevancy to the Subject Matter—Proportionality*, 8 Fed. Prac. & Proc. Civ. § 2008.1 (3d ed.).   Thus it is important to remember this is not a simple dispute between a depositor and his bank on an isolated accounting error on a particular account, but a dispute about whether Defendant has (as a state actor) maintained a system regularly

taking from prisoners within his charge (and thus without other options) what amounts to in the aggregate substantial sums of money without any compensation.

Defendants have already provided such information with regard to 1stINT-1(a) (all inmates) through their Exhibit State-000000009, which goes back to January 2012. However, they have not done so with respect to 1stINT-1(b) (indigent inmates). Accordingly, Defendants will be required to supplement their response to 1stINT-1(b) with records from October 2012 through December 2019.

### b.   1stINT-2(a)

First interrogatory number 2(a) requested:

> The following information concerning the interest earned on ITAs under A.R.S. § 41-1604.05 from January 1, 1972 to present:
> a. Total annual interest earned from all investment vehicles

Defendant initially responded "$289,295.65," but filed a Second Supplemental Response (Doc. 82, Exh. B) asserting "CORRECTED ANNUAL INTEREST EARNED = $596,979.16."

Plaintiff argues this response covers 2016 to 2018, and thus fails to cover the required time period.  Plaintiff further argues that the response was not provided under oath, and thus does not comport with Fed. R. Civ. Proc. 33(b)(3) (".  (Motion, ¶¶ 8-10.)

Defendant responds that he provided "monthly and yearly totals from January 2016 through December 2018 (the last full month available before the response)."   This apparently relates to Exhibit State-000000003 attached to Defendant's supplemental response.  Defendant again argues that only Plaintiff's revenue is relevant and only earnings within the limitations period.  Defendant asserts that a verification was provided, and provides another copy.

Again, Defendant has waived any objections, leaving the Court to ascertain whether the request is within the bounds of fair discovery.  The Court finds that this information fairly appears relevant to the determination of comparing costs and revenues.  It may be that ultimately it is only Plaintiff's revenue that matters.  *See Brown*, 538 U.S. at 235–36

("the 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain").   But accounting is an art and not a science.  It may be that the total amounts involved reveal deficiencies in the means of accounting for individual prisoners' funds.

The Court further finds that records from the period beginning in October 2012 through December 2019 are with the bounds.   Although Plaintiff was released in August 2019, the same concerns about accounting practices justify discovery beyond that time period.

The Court further finds that any issue concerning a verification of the responses to this discovery or any other has been resolved.

Accordingly, Defendants will be required to supplement their response to 1stINT-2(a) with monthly records from October 2012 through December 2019.

### c.   1st INT-2(b)

First interrogatory number 2(b)(iv), and (vi)-(x) requested and relevant responses were:

> The following information concerning the interest earned on ITAs under A.R.S. § 41-1604.05 from January 1, 1972 to present:
> b. Concerning each investment vehicle utilized, state:
> * * *
> iv. Which ITAs were being invested;
> **SUPPLEMENTAL   RESPONSE:**   Inmate Trust Account (ITA) has a checking account with Bank of America. The inmates do not have individual accounts with Bank of America. They have individual accounts in the Adult Inmates Management System, maintained by the Department of Corrections. ITA deposits any funds of the offenders with the State Treasurer in interest bearing bank/ investment account. All proceeds from this account are deposited in the Special Services Fund and used for the benefits, education and welfare of the inmates.  Not all money are invested. There are sufficient funds in an operating (checking) bank account to cover daily transactions.
> * * *
> vi. Percentage yield for each interest-earning period;
> **RESPONSE:**   See   STATE-000000003-0007 (Total Interest Earned 2016-2018, AZ State Treasurer's

Office Historical Monthly Yield July 1992 to December 2018).

vii. Method used to affix date that interest earned is to be credited (e.g. last calendar day of a month);

**RESPONSE:** See STATE-000000003 (Total Interest Earned 2016-2018).

viii. Date that interest was earned during each interest-earning period;

**RESPONSE:** See STATE-000000003 (Total Interest Earned 2016-2018).

ix. Offender fund balance that was invested within each interest-earning period; and

**RESPONSE:** See STATE-000000001-0002 (Timothy Olmos ITA Stat).

x. Total interest earned within each interest-earning period.

**RESPONSE:** See STATE-000000003 (Total Interest Earned 2016-2018).

**(iv) Invested Funds** - Plaintiff argues the response on 2(b)(iv) fails to differentiate invested and uninvested funds. Defendant argues his response was adequate, pointing to his Second Supplemental Response (Doc. 82 Exh. B). (Motion at ¶¶ 11-13.) The Court finds the response sufficient. The import of the request was to identify investment vehicles and facts surrounding them (not to differentiate treatment of funds), and this response did so.

**(vi) Percentage Yield** – Plaintiff argues the response on 2(b)(vi) should have extended back to 1972, and Defendant has failed to supplement with records past December 2018. (Motion at ¶¶ 14-16.) Defendant asserts that the provision of records since 1992 is adequate, and although denying a promise to update with more current records, indicates an intent to do so.

Defendant has waived any objection to the scope of the request.

As discussed above, the Court finds that dates older than October 2012 are beyond the fair bounds. There is no basis for failing to provide records through the date of Plaintiffs' release, with or without an agreement to do so. Rule 37(a)(5), in the course of allocating the expenses of motions to compel, makes clear that when "requested discovery is provided after the motion was filed," it is treated as unprovided. And here, Defendant had not provided responses even at the time of the response to the motion, let alone prior to the motion.

Defendant will be required to supplement this response with any omitted records from October 2012 through August 2019.

**(vii) Credit Date** – Plaintiff argues that Defendant's reference to the table of interest earned is not responsive because it fails to identify the crediting date determination method, and is limited to 2016 to 2018.  (Motion at ¶¶ 17-19.)   Defendant argues the reference to the exhibit was sufficient because it provided the crediting date and the method of determination is not relevant, and that records up to August 2019 will be provided.

Again, Defendant has waived any objection to the scope of the request.

As discussed above, the Court finds that dates older than October 2012 are beyond the fair bounds.   There is no basis for failing to provide records through the date of Plaintiffs' release, with or without an agreement to do so.

The request was for the credited date.  The responsive table only reflects the "Date Earned."  Counsel's representation in briefing that they were the same does not amount to a response under oath.

Moreover, the Court finds no reason to conclude that the method of determination is outside the fair bounds of relevancy.

Defendant will be required to supplement this response with any omitted records from October 2012 through December 2019, to provide the crediting dates (or an explanation thereof), and to provide the requested method of determination for the crediting date.

**(viii) Earned Date** – Plaintiff repeats his objections to the response to interrogatory 2(b)(vii).  (Motion, ¶¶ 20-22.)   Defendant repeats his contention that the method of determining the date is not relevant, the time frame was appropriate, and the recent records will be provided.

Defendant has waived his relevancy objection, and the Court finds it within the fair bounds of relevancy.

Defendant will be required to supplement this response with any omitted records

from October 2012 through December 2019, to provide the earned dates (or an explanation thereof), and to provide the requested method of determination for the crediting date.

**(ix) Offender Fund Balance** – Plaintiff argues that Defendant's response was limited to his fund balance, and should have included all inmates' balances, and that it was too restrictive in time. (Motion at ¶¶ 23-25.) Defendant argues that Plaintiff's claim is limited to his funds and the dates were limited on the basis of the statute of limitations.

Defendant has waived his objections, and the Court finds the request (as limited hereinafter) within the fair bounds of relevancy.

For the reasons discussed above, the Court will restrict the dates. The Court also finds that to the extent Plaintiff's request could be read to seek an accounting for each inmate's account balance the request is beyond the bounds of fair discovery in terms of proportionality. Although the Court sees the relevance to Plaintiff's claim of the treatment of his own funds, and to the treatment of other inmates' funds in the aggregate, Plaintiff has no discernible interest in tracking the funds of particular inmates. And, if there is no interest in any particular inmate, then the only relevant issue is the aggregate treatment of all inmates funds.

Defendant will be required to supplement this response with any omitted records from October 2012 through December 2019, to provide the monthly, aggregate balance of all inmate trust account funds.

**(x) Total Interest Earned** – Plaintiff argues that the information provided in STATE-000000003 (Total Interest Earned 2016-2018) does not cover the requested times at both ends of the calendar. (Motion, ¶¶ 26-28.) Defendant again argues for the restricted time limits.

Defendant has waived his objections, and the Court finds the request (as limited hereinafter) within the fair bounds of relevancy.

For the reasons discussed above, the Court will restrict the dates. Defendant will be required to supplement this response with any omitted records from October 2012 through December 2019, to provide the monthly total interest earned.

### d.   1stINT 3

First Interrogatory 3 requested and was responded to as follows:

> Describe in detail, including citations to legal authorities, all your defenses you plan to use to actually raise during any future proceeding within this action.
>
> **RESPONSE:** Objection by counsel on ground of the work product doctrine. Defendant have not decided what evidence they will use at trial should this matter survive summary judgment. The rules of procedure require the disclosure of evidence according to a schedule set by the rules or by order of the Court. Defendants will comply with that schedule. *See Ray v. Washington Nat. In . Co.* , 190 F.R.D. 658, 666 (D. Mont. 1999) ("interrogatories which attempt to compel a party to identify its trial exhibit during discovery are discouraged, because the responding party has not fully discovered or evaluated his case at that juncture. The disclosure of trial exhibits usually occurs when the proposed pretrial order is filed.")

Plaintiff argues that the response is non-responsive, the request having not sought trial exhibits, and that a privilege has not been adequately raised under Rule 26(b)(5). (Motion ¶¶ 29-31.) Defendant concedes trial exhibits were not at issue but stands by the objection. Defendant discloses an intent to rely on a statute of limitations defense, and a qualified immunity defense. Defendant argues no privilege log was required because no trial exhibits were at issue.

The response is non-responsive. The request plainly sought "defenses" not evidence. Although the Response to the Motion identifies certain defenses, it is not under oath nor does it purport to be complete. Nor does the work product privilege protect the disclosure of defenses, which privilege is generally limited to "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. Proc. 26(b)(3)(A). Moreover, to the extent the request might somehow have touched upon work product, any such privilege was not properly asserted and would thus be waived. *See* Fed. R. Civ. Proc. 26(b)(5) (requiring description of matters not produced).

The Court does, however, find the request for a citation to legal authorities troubling. Interrogatories can explore legal positions. "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the

application of law to fact." Fed. R. Civ. Proc. 33(a)(2). But, one cannot in the name of discovery impress another party into becoming a legal consultant. Given Plaintiff's *pro se* status, the court finds that some citation may be necessary to given meaning to what might otherwise be to Plaintiff an unfathomable response. The requested citations should be sufficient to allow Plaintiff to identify the source of the defense. Defendant's citations in the Response to the Motion explaining his statute of limitations and qualified immunity defenses (Doc. 137 at 10) are good examples of what can fairly be required.

Defendant will be required to supplement this response with all defenses, and some relevant citation to supporting legal authority.

### e.   1stINT-5

First Interrogatory 5 requests and was responded to as follows:

> Contact information (i.e. work address, telephone number, and e-mail address to each person identified within Interrogatory No. 4, supra.
> **RESPONSE:** Objection by counsel: Plaintiff is not entitled to communicate with any ADC official except through the Attorney General's Office.

Plaintiff argues he is entitled to such information on witnesses. (Motion at ¶¶ 32-34.) Defendant stands by the objections and points out that no one was disclosed in response to Interrogatory No. 4, and thus the issue is moot.

The Court finds the issue in 1stINT 5 moot.

### f.   2ndINT

Plaintiff's Second Set of Interrogatories requested:

> For all ADC staff that have had a part in the administration of the ADC Special services Fund from January 1, 2005 to present, state the following for each person:
> a. Name
> b. Job Title
> c. For each year that the person was employed by ADC, set forth
> > i. Annual burdened compensation that sets forth each component that ADC pays for individually (e.g. salary, health benefits, paid vacation, sick leave, etc.)

- 14 -

ii. Name of each ADC fund/ funding source administered, along with the total moneys found within the fund throughout the fiscal year (i.e. balance carried forward plus all other deposits from any source).

Defendant responded "OBJECTION: irrelevant, overly broad, unduly burdensome, not proportional."

Plaintiff generally argues that the response is evasive, that the interrogatory properly seeks to avoid a "*Schneider*" defense to Count Two (expenses of maintaining the ITAs or Special Services Fund meant no net taking).

Defendant argues that the compensation of ADC employees is irrelevant to either Count Two or Count Seven, and the request is not proportional given the limited amount of Plaintiff's likely award on Count Two.

The Court is not convinced by Defendant's argument that the request is irrelevant. Defendant does not deny an intent to rely upon the costs of maintaining the Special Services Fund as part of attempts to show the lack of a taking on Count Two.   His defense overall on Count Two is the exceedingly broad assertion that "the prison system's expenses on Plaintiff exceed the interest he would earn from his Inmate Trust Account."

Nor does Defendant proffer anything to show disproportionality, beyond the rejected contention that this case is just about $10.

The Court does find that the request exceeds the bounds of fair discovery in several respects.  First, arguably any ADC employee who had any connection with the Special Services Fund, no matter how small, would come within this request.  For example, a prison employee who processed a request for a payment for snacks which would ultimately be drawn from the Fund could be deemed included.  The only ones who are relevant, however, are those whose salary is relied upon by Defendant to justify the failure to account to prisoners for the interest on their trust funds.

Secondly, the Court finds that the request should be limited to the period October 2012 through December 2019.

Third, the Court finds that at this juncture, the disclosure of the names of the employees is not relevant, and disproportional in light of the burden to such employees of

the disclosure of their incomes.

Accordingly, Defendant will be required to respond to Plaintiff's Second Set of Interrogatories, provided that the information be limited: (a) to employees whose employment expenses Defendant relies upon as expenses to offset income from the Special Services Fund to justify failure to deliver interest to inmates; (b) to the period October 2012 through December 2019; and (c) names need not be provided.

## 2. ADMISSIONS

### a.   RFA-1

Request for Admission number 1 asked:

> Admit that all of the factual and legal allegations set forth in Counts
> II and VII of the Complaint (Doc. 18 at 5, 19-20) are true.

Defendant responded:

> Objection by counsel: The rules of procedure require Requests for
> Admission to seek the admission of discrete factual matters. Rhodes
> v. Houston, 258 F. Supp. 546, 583 (D. Neb. 1966) (striking RFAs that
> were "factually unobjective and argumentative in their tenor, and
> largely seek not facts but the acknowledgment of [the litigant's]
> interpretation of what he contends to be the legal significance of facts,
> themselves in dispute.") This request calls for the blanket admission
> of numerous facts and potential legal conclusions.

Plaintiff argues that the request is proper, and is limited to the contents of the Complaint. (Motion at ¶¶ 35-37.)   Defendant stands by the objection.

Rule 36 permits requests for admission of "facts, the application of law to fact, or opinions about either."   Fed. R. Civ. Proc. 36(a)(1)(A).   Thus, such requests are not required to be devoid of argument, or the legal significance of facts.  Whatever the source of Judges Van Pelt and Delehant's decision in *Rhodes* may have been, they did not disclose the sources, and the decision is contrary to the plain language of current Rule 36.

Originally, Rule 36 was limited to matters of "fact."  *See* Ted Finman*, The Request for Admissions in Federal Civil Procedure,* 71 Yale L.J. 371, 409 (1962).  This was form of the rule applicable at the time of the Rhodes decision in 1966.  But, in 1970 Rule 36 was amended.

> As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact. It thereby eliminates the requirement that the matters be "of fact." This change resolves conflicts in the court decisions as to whether a request to admit matters of "opinion" and matters involving "mixed law and fact" is proper under the rule.

Fed. R. Civ. Proc. 36, Advisory Comm. Notes to 1970 Amendment.

Defendant expounds on the objection by relying on *Rapp v. Laufers*, 2019 WL 121105, *3 (W.D. Wis. 2019), and its quotation of *Pittsburgh Hotels Ass'n v. Urban Redev. Auth. Of Pittsburgh*, 29 F.R.D. 512, 513 (W.D. Pa. 1962). But *Pittsburgh Hotels* was relied on the same, now out-dated version of Rule 36 relied on in *Rhodes*. Moreover, the substance of the decision in *Rapp* was to dispose of a suite of some 362 requests for admissions, not to dispose of individual are requests as being outside modern Rule 36(a)(1).

But that is not to say that requests for admission are an anything-goes proposition. Rule 36 allows requests for admission as to a "matter," not an entire case. Rule 36(a)(2) specifically directs that "Each matter must be separately stated." Here, Plaintiff has done the equivalent of crafting a 1,000 word restatement of his case and then asking for an admission or denial. But Defendants have already, in the Answer, denied his claims. Instead of crafting a request for an admission to a discrete matter, he has conglomerated a request for admission of a raft of matters that he has incorporated by reference to his Complaint. Permitting such requests for admission would, in effect, nullify the limit on the number of requests for admission set by the Court in its Scheduling Order, and render a request for admissions nothing more than a repeat of existing pleadings.

Accordingly, that portion of the objection is sustained, and no additional response to RFA 1 will be required.

### b.   RFA-4, 5, and 6

Request for admissions number 4 requested:

Admit that when Olmos submitted his weekly indigent order for two disposable razors and a bottle of shampoo on December 11, 2018, the order for those hygiene items was rejected.

Defendant responded:

Defendant Ryan had no personal involvement in Plaintiff's indigent orders or purchases of shampoo. He can neither admit nor deny this request because he does not yet have access to the appropriate documentation allowing him to provide an answer. ADC is reviewing records to locate this documentation. Upon receipt, Defendant Ryan reserves the right to supplement this answer.

Request for Admission 5 asked:

Admit that on November 6, 2018, ASP Kingman – Huachuca Unit CO III Keith Dufrane notified Olmos via an Inmate Letter Response that shower shoes "have been discontinued from the commissary indigent supply approximately a year and a half ago (1½) and are no longer available to be ordered through an indigent request."

Defendant responded:

Defendant Ryan had no personal involvement in Plaintiff's shower shoes. He can neither admit nor deny this request because he does not yet have access to the appropriate documentation allowing him to provide an answer. ADC is reviewing records to locate this documentation. Upon receipt, Defendant Ryan reserves the right to supplement this answer.

Request for admission number 6 asked:

Admit that, despite the fact that Olmos' prisoner spendable account was carrying a negative spendable balance on November 1, 2018, on November 7, 2018 ASP Kingman staff C. Neiffer denied Olmos' Application for Indigent Status – Health and Welfare (submitted on November 1, 2018), with the justification "Funds Exceed Policy Guidelines" handwritten into the comment section of the application.

Defendant responded:

Defendant Ryan had no personal involvement in Plaintiff's indigent status. He can neither admit nor deny this request because he does not yet have access to the appropriate documentation allowing him to provide an answer. ADC is reviewing records to locate this documentation. Upon receipt, Defendant Ryan reserves the right to supplement this answer.

Plaintiff argues that Defendant had full authority over ADOC and its contract prison, and cannot simply rely on his lack of personal knowledge, and no update has been provided.  (Motion at ¶¶ 38-46.)

Defendant now argues that Plaintiff's request is attempting to establish respondeat superior liability, which does not exist in civil rights cases.  Defendant argues that reserving the right to supplement is not a promise to supplement.

Rule 36(a)(4) provides in pertinent part: "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

This makes clear that Defendant's lack of personal involvement is irrelevant. Moreover, there is no suggestion that Plaintiff is asking to establish some respondeat superior liability for his lack of supplies, as opposed to harm from the challenged policies. Liability based on a defendant's institution of a policy is not respondeat superior liability, but liability for direct actions.  The Court considers this discussion a red herring.

Here, Defendant met the substance, if not the letter of Rule 36(a)(4) by asserting lack of knowledge or information ("no personal involvement," "does not yet have access to the appropriate documentation"), reasonable inquiry ("ADC is reviewing records"), and an inability to admit or deny ("can neither admit nor deny").

Accordingly, Defendant's response was within the rule.

However, with or without a promise to supplement, Defendant is not free from obligation to supplement his responses.  Rule 26(e)(1) provides that a "party…who has responded to [a]…request for admission—must supplement or correct its…response...in a timely manner."  Thus, Defendant cannot simply rest upon his lack of information at the time he responded to the requests.  Here, there has been ample time for Defendant to have obtained the records.  (His response to the RFA was served almost 14 months ago.)  Rule 26(e)(1) allows the Court to order a supplementation.  The Court will do so.

The Court notes with regard to RFA 5 and 6 Defendant argues: "He did not rule the private-beds facilities through fear, and could not interfere at will with their operations." Whatever the limitations of Defendant's authority over contract facilities, Defendant fails to show that it precludes him from access to the records sufficient to respond to RFA 5.

Defendant will be required to supplement his responses to RFA 4, 5, and 6.

### c.   RFA-7

Request for Admission number 7 requested:

> Admit that, under the subheading entitled "THE IMPORTANCE OF FLOSSING," the Journal of the American Dental Association, vol. 131, p. 1095 (July 2000) states: "Cleaning between your teeth is every bit as important as brushing."

Defendant responded:

> Objection by counsel: Plaintiff has not provided a copy of this publication.

Plaintiff argues that the objection is improper under Rule 36(b)(4), and Rule 36(a)(2) only requires provision of a document if the request is to admit the genuineness of the document.  Plaintiff further asserts he had provided a copy to Defendant in another lawsuit and reminded counsel of that fact.

Defendant argues there is no Rule 36(b)(4) and a copy is necessary to admit or deny quoted language.  Defendant asserts that the referenced lawsuit terminated five years before.

There is no Rule 36(b)(4).  The Court presumes Plaintiff intended to reference Rule 36(a)(4) which specifies the permissible form of answers to a request for admission.   But Rule 36(a)(5) permits objections, and Rule 36(a)(3) makes clear that it is a timely "written answer or objection" that is required.

Rule 36(a)(2) provides: "A request to admit the genuineness of a document must be accompanied by a copy of the document unless it is, or has been, otherwise furnished or made available for inspection and copying."  But Plaintiff is not seeking an admission of the genuineness of a document, such as a check or contract, where there may be dispute as to whether there have been unauthorized modifications, lost pages, etc.   Thus, this Rule has no application.

Accordingly, the objection is overruled.

As a practical matter, however, the Court agrees that it is unfair for Plaintiff to cite

some far-off magazine article and demand an admission as to its contents without providing a copy.  Nor is the Court convinced that a reference to ancient litigation is a fair substitute, particularly for someone like Defendant Ryan who is involved in hundreds, if not thousands of lawsuits.  It is unduly burdensome to suggest Ryan should go to the trouble, if the article is in Plaintiff's hands.  This is particularly so because Plaintiff proffers no means of introducing this hearsay magazine article at trial.  Accordingly, the Court finds this request for admissions beyond the bounds of fair discovery.

No further response to RFA 7 will be required.

## 3.  REQUEST FOR PRODUCTION

### a.   1stRFP 1

Request 1 of Plaintiff's First Requests for Production sought:

> All records and retention and destruction schedules applicable to every ADC division, division unit, and division sub-unit effective from January 1, 1992 to present, regardless of what unit of state government that created said schedules.

Defendant responded "Objection by counsel: overbroad and unduly burdensome."

Plaintiff argues that Defendant actually responded by providing a schedule effective October 9, 2014, but this did not meet the temporal scope of the request.  Plaintiff argues Defendant has not explained any over breadth or burdensomeness.  (Motion at ¶¶ 50-52.)

Defendant quotes his objection but does not argue it.  Defendant clarifies that the October 9, 2014 schedule was provided in response to 1stRFP 4.

Defendant fails to argue his objections (only quoting his response to the request), and thus the Court deems the objections waived. *See DIRECTV*, 209 F.R.D. at 458 (burden of persuasion); and *Cotracom*, 189 F.R.D. at 662 (obligation to argue in response).   The Court finds the dispute over the October 9, 2014 schedule unnecessary to resolve, the question being what, if any, response is required to this request.

Without objection, the Court is left to ascertain whether the request is outside the bounds of fair discovery.  Plaintiff proffers no explanation for expanding this request to

literally every nook and cranny of the ADC organization over a period of some 28 years. The Court concludes that except as limited herein, this request is outside the bounds.

Defendant will be required to respond to 1stRFP 1 by provide the requested schedules applicable: (a) to either the maintenance of records on inmate trust accounts and the Special Services Fund or other investment accounts or funds in which ITA funds were deposited, or the maintenance of records on Plaintiff's requests for hygiene supplies; (b) for the period October 2012 through December 2019.

### b.  1stRFP 2

Request 2 of Plaintiff's First Requests for Production sought:

> All documents that describe the full scope of the responsibilities of each ADC Central Office division, division unit, and division sub-unit referenced in Interrogatory No. 4, supra. When you respond, you are requested to separate responsive documents into groups that correlate to the ADC Central Office division, unit, or sub-unit that each group concerns.

Defendant responded: "Objection by counsel: overbroad and unduly burdensome."

The referenced Interrogatory 4 sought:

> A current, unabridged organizational chart limited to ADC Central Office employees within each ADC Central Office division ( e.g., Strategic Planning, Prison Operations, etc.), unit ( e.g., Security Operations, Human Services, etc.), and sub-unit ( e.g., Finance, Records, Applications, etc.).

Plaintiff references his arguments regarding the summary and baseless nature of the objections. (Motion at ¶¶ 53-55.)

Defendant argues that his objection was adequately stated, and argues the request includes a substantial number of documents and extends to units which "have nothing to do with the merits of Mr. Olmos's claims."

Defendant asserts: "Mr. Olmos cites no authority in case law, rule, or statute, that particular language must be used when objecting to a request for production."

Defendant argues: "Mr. Olmos cites no authority in case law, rule, or statute, that particular language must be used when objecting to a request for production." To the

contrary, Plaintiffs' Memorandum in Support specifically cited to and argued several cases for the proposition that objections must be stated with supporting reasons.  (Memorandum in Support, Doc. 121 at 4.)

While no talismanic language is required to state a valid objection, contrary to Defendants' arguments, Rule 34(b)(2)(B) requires that in responding to a request for production a party must "state with specificity the grounds for objecting to the request, including the reasons."  Indeed, even prior to the 2015 amendments which adopted that portion of Rule 34 courts routinely held that boilerplate objections such as *overly burdensome*  or *irrelevant*  were, without explanation, insufficient.  "However, the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery 'must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D.Pa.1980)).[2]  *See also A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 188 (C.D. Cal. 2006); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276 (N.D. Cal. 2015); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000); and cases cited therein.

Moreover, Rule 34(b)(2)(C) now provides: "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."

Defendant's objection meets neither of these requirements in Rules 34(b)(2)(B) and (C).  With regard to specificity, Defendant offered no reasons for the objection.  Indeed, Defendant's response of "overbroad and unduly burdensome" provided no means for Plaintiff to identify the nature of Defendant's concern or how to restate his request to make

---

[2] Although *Josephs* address interrogatories under Rule 33, the Advisory Committee Notes to the 2015 Amendment to Rule 34(b)(2)(B) noted: "This provision adopts the language of Rule 33(b)(4), eliminating any doubt that less specific objections might be suitable under Rule 34."

it fall (in Defendants' eyes) within the rules. While such approaches may be smart tactically (leaving a respondent to concoct the basis for objection after seeing a motion to compel), they are in contravention of the Rules' policy in favor of full discovery. *Farnsworth*, 758 F.2d at 1547.

Defendant also failed to identify what responsive materials were being withheld. And although Defendant apparently concedes that at least some ADC units are relevant, Defendant failed to produce the responsive portions. Accordingly, Defendant's objections were not properly raised and are deemed waived.

Nonetheless, as framed, the request is beyond the bounds of fair discovery in terms of the affected units. Only records with relevant to this case are those related to units or subunits within ADC's central office or its various divisions: (1) governing either (a) the maintenance of and accounting for inmate trust accounts and their investment, or (b) the provision of hygiene supplies to indigent inmates, have any relevance to Plaintiff's claims; or (2) on whose related expenses Defendant relies for offsets against interest earned on ITA funds.

Accordingly, Defendant must respond to 1stRFP 2 by providing the requested records related to such units.

### c. 1stRFP 3

Request 3 of Plaintiff's First Requests for Production sought: "Copies of all authorities referenced in your response to Interrogatory No. 3." Defendant responded: "Objection by counsel on grounds of the work-product doctrine."

The referenced interrogatory asked:

> Describe in detail, including citations to legal authorities, all your defenses you plan to use to actually raise during any future proceeding within this action.

Plaintiff reasserts his arguments on the interrogatory (i.e. the request having not sought trial exhibits, and that a privilege has not been adequately raised under Rule 26(b)(5). (Motion at ¶¶ 56-68.)

Defendant reiterates his reliance on his objections, identifies various defenses and authorities, and asserts as no document were produced a log was unnecessary.

For the reasons discussed with regard to 1stINT 3 (*supra* Section C(1)(D)), Defendant failed to meet the requirements for an assertion of a work product priviliege, which in any event did not apply.  Accordingly, the objection is waived.

On the other hand, the request is beyond the bounds of fair discovery.  One party cannot, absent unusual circumstances (e.g. authorities uniquely accessible to a party, such as foreign law), require another to act as their law library.

No response to 1stRFP 3 will be required.

#### d.   1stRFP 5

Request 5 of Plaintiff's First Requests for Production sought

> Statement of Olmos' ITAs from July 1, 2005 to present. Note: This request includes a mandate that you, on the first business day of each month going forward until this action terminates via a settlement, trial, or the exhaustion of the appellate process by either party, disclose a statement of Olmos' ITAs covering the preceding month.

A footnote specified: "In the form found in Attachment 1."  Plaintiff argues this was "what was used as his certified account statement, and contains a running balance feature."

Defendant responded:

> See STATE-000000001-0002. Objection by counsel to the remainder of this request, such as the argument of a "mandate" to produce on-going reports on a monthly basis.

Plaintiff argues that the records produced covered only 2014-2018, they were not in the requested form (which he argued correctly reflected interest earned, unlike the records produced) and that updates have not been provided, even though promised by defense counsel.  (Motion at ¶¶ 59-61.)

Defendant argues the information requested has been provided, Plaintiff is not entitled to specify the form of response, and no mandate for updates is authorized under the rules.

As to form, Rule 34(b)(1)(C) explicitly provides that a request for production "may specify the form or forms in which electronically stored information is to be produced." Rule 34(b)(2)(D) provides:

> The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form--or if no form was specified in the request--the party must state the form or forms it intends to use.

Here, Plaintiff specified a form.  Defendant did not object to the form, but instead simply chose another form.  (Indeed, even now, Defendant offers no basis for not providing the specified form.)  Accordingly, any objection to the specified form was waived.

Defendant argues that Rule 34 does not authorize a request for periodic updates. Assuming *arguendo* that this is true, Rule 26(e)(1) requires that a party "who has responded to [a]…request for production…must supplement…its…response…in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Here, Plaintiff plainly sought not only the past accountings, but those in the future, in light of the ongoing nature of the violations alleged.  As time progressed, and additional information was produced (which Defendant does not assert he was unaware of), then "timely" supplementation was required.  While "monthly" is not necessarily, timely certainly provision of an update within a reasonable time after Plaintiff's release from prison (and thus the closing of his trust account) would have been timely.  But Defendant still has not updated his response.

Defendant did not object in either his response to the request or his brief to the timeframe requested.  Given the limited scope of the request and its direct relation to Plaintiff, the Court finds the timeframe within the bounds of fair discovery.

Accordingly, Defendant will be required to respond to 1stRFP 5 by providing the requested accountings, in the form specified, for the requested period of July 1, 2005 through the date of the closing of Plaintiff's inmate trust account.

/ /

### e.  1stRFP 6

Plaintiff's Request 6 in his First Requests for Production sought:

> All documents concerning, in any aspect, ADC's 2018 decision to increase the number of sanitary napkins and/or tampons provided to female prisoners at State expense.

Defendant responded: "Objection to relevance and lack of proportionality."

Plaintiff argues the records are relevant to showing a pattern or practice of not providing sufficient hygiene supplies, prior notice and failure to rectify it until legislation was proposed.  He argues that the limitation to a single decision is "the epitome of proportionality."  (Motion at ¶¶ 62-64.)

Defendant argues: "This case does not concern, in any way, shape, or form, sanitary napkins or tampons, so the request is completely irrelevant regardless of the motivation in making it."

By failing to argue proportionality, Defendant waives that objection.

And, apart from the arguable waiver from failure to identify the reasons for the objection, the Court is not convinced that the requested information is not relevant.  *See* Fed. R. Evid. 404(b) (allowing evidence of other acts to prove, *inter alia* intent, plan, knowledge, etc.); Fed. R. Evid. 406 (allowing evidence of routine practice to show action in accordance with practice).

Defendant will be required to respond to 1stRFP 6.


### f.  2ndRFP 1

Plaintiff's Request 1 in his Second Requests for Production sought:

> A current, unabridged organizational chart limited to ADC Central Office employees within each ADC Central Office division (e.g., Strategic Planning, Prison Operations, etc.) unit (Security Operations, Human Services, etc.), and sub-unit (e.g., Finance, Records, Applications, etc.)."

Defendant responded objecting on relevance and that "no such chart exists and documents do not have to be created in responses to discovery requests under Rule 34."

Plaintiff argues the request is relevant and asserts Defendant has knowledge it

1  exists, citing Doc. 75 at 8.  (Motion at ¶¶ 65-67.)  (The cited document references a "partial

2  chart" disclosed in another of his cases.)

3       Defendant argues that the requested charted does not exist, the existence of a partial

4  chart does not prove otherwise, and creation of records is not required.

5       "As a general matter, a party cannot invoke Rule 34(a) to require another party to

6  create or prepare a new or previously non-existent document solely for its production."

7  *Mir v. L-3 Communications Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016)

8  (quotations and citations omitted).  Plaintiff fails to show that the chart he requests exists.

9       No further response to 2ndRFP 1 will be required.

10

11  **g.   2ndRFP 2**

12  Plaintiff's Request 2 in his Second Requests for Production sought:

13       The claims found within Counts II and VII were made known to Ryan
     via a prior complaint filed on March 14, 2011. *Olmos v. Ryan*, No.
14       CV 10-2564- PHX-GMS (D. Ariz.) . . . Hence, you are requested to
     produce all documents created and/or received by ADC Central
15       Office concerning any aspect of the claims found in Counts II and VII
     of the Complaint dated and/or created from March 14, 2011 to
16       present"

17  Defendant responded: "Objection, vague and ambiguous. Plaintiff was a party to

18  the case he references and should have all relevant documents."

19       Plaintiff argues the request was not vague or ambiguous, nor did not Defendant

20  attempt to show they were, and discovery was not complete in that case. (Motion at ¶¶ 69-

21  71.)

22       Defendant now argues that he "stands by his objection" arguing no special language

23  was required, and that Plaintiff has shown access to some documents from that case by

24  citing them.  Defendant argues for the first time the request was unduly burdensome,

25  referencing Plaintiff's expansive definition of the term "documents" in his requests.

26       As discussed hereinabove (*supra* Section C(3)(b)), specificity and reasoning is

27  required to state a valid objection.  A bald assertion of "vague and ambiguous" is not

28  sufficient.  Moreover, Defendant's original objection of vagueness or ambiguousness is

waived by failure to argue it in response to the motion.

Defendant's new objection on proportionality was waived by failure to raise it in response to the request.

Defendant's objection on the basis that the documents were in Plaintiff's possession is unconvincing. Plaintiff did not limit his request to pleadings, motions, or even served discovery responses in the earlier case, but to "all documents created and/or received…concerning any aspect of the claims."

Moreover, the fact that the documents may have previously been in Plaintiff's possession is no indication that they are now. Certainly, to the extent that Defendant can establish they are currently in Plaintiff's possession, production might be disproportionate if the volume of such documents, in comparison to those subject to the request, were significant. But Defendant offers nothing to suggest that is the case.

Accordingly, Defendant will be required to respond to 2ndRFP 2.

### h.   3rdRFP 2

Plaintiff's Request 2 in his Third Requests for Production sought:

> ADC's complete compensation schedule that includes, at minimum, the following elements for each compensation level: (1) Gr number; (2) exempt (salary)/non-exempt (hourly) status; and (3) annual wages.

Defendant responded: "OBJECTION: Irrelevant, overly broad, unduly burdensome, not proportional."

Plaintiff argues the request is relevant "to repel a *Schneider* defense," and that Defendant has failed to adequately state the remainder of his objection. (Motion at ¶¶ 71-73.)

Defendant argues the request for wages is not relevant to either of Plaintiff's claims, and the request related to every employee is disproportionate.

The Court finds the request relevant in so far as it relates to any employees whose compensation Defendant contends should be used as an offset against interest earned on

inmate trust account interest.   Accordingly, Defendant will be required to respond to 3rdRFP 2 for such employees

### i.   3rdRFP 3

Plaintiff's Request 3 in his Third Requests for Production sought:

> Receipts of all inmate store purchases made by Olmos from July 1, 2015 to present.  Note: Due to a clerical error, inmate store purchases debited from Olmos' prisoner spendable account on August 5, 12, and 16, 2005 are reflected by inmate store receipts dated 8/4/99, 8/11/99, and 8/17/99 respectively."

Defendant responded: "See July 2015 to December 2015 Red Rock order history {STATE-000000045-0047) and December, 2015 to May 8, 2019 Kingman order history (STATE-000000048-0067), both attached."  The attachments appear to list a date, various unidentified non-monetary numbers, and a description of items.

Plaintiff argues that the provided attachments omit any pricing, taxes, etc, fail to reflect unfulfilled orders, and fails to meet the temporal requests.  (Motion at ¶¶ 74-76.)

Defendant argues the unprovided information (and all of Count VII) were mooted by his release, citing *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012).

Defendant waived any objections by failing to include them in his response to the discovery.

Moreover, it appears Defendant has proffered substituted information to omit the very facts which are most relevant to Count VII, Plaintiff's unfulfilled hygiene supplies requests.

Defendant is surprisingly mistaken about his contention that Count VII has been rendered moot by Plaintiff's release.  *Alvarez* stands for the unremarkable proposition that requests for *injunctive* or *declaratory* relief in a prisoner case is generally rendered moot by the prisoner's release.  *Alvarez*, 667 F.3d at 1064. Although *Alvarez* also recognized that exceptions to this principle can sometimes apply.  *Id.* at 1064-1065.  But here, "Plaintiff seeks declaratory and injunctive relief and monetary damages." (Order 7/25/18, Doc. 21 at 3.)  As injuries in Count VII he identified "financial injuries" and "physical

1  pain," and in his prayer for relief he sought "compensatory damages" on *inter alia* Counts

2  Two and Seven.  (First Amended Complaint, Doc. at 19, 21.)

3      Defendant also fails to recognize his duty to supplement.

4      Defendant will be required to respond to 3rdRFP 3 by providing the requested

5  receipts from July 1, 2015 through the date of Plaintiff's release.

6

7  **j.   4thRFP**

8      Plaintiff's Fourth Request for Production sought:

9          All policy and procedure documents that set forth the authorized

10  categories of expenditures of ADC Special Services Fund moneys, effective January 1, 1972 to present. Note: According to records

11  retention schedule no. GS 1018 (revised), record series no. 10293 (eff. Aug. 26, 2016) created by the Arizona State Library, Archives

12  and Public Records the requested documents have a permanent retention period for all state and local agencies.

13      Defendant responded: "OBJECTION: Irrelevant, overly broad, unduly

14  burdensome, not proportional."

15      Plaintiff argues the request is relevant to showing that the funds were used devoted

16  to public use, a fact on which Plaintiff has unsuccessfully sought a stipulation, and the

17  objections on proportionality are not adequately stated.  (Motion at ¶¶ 77-79.)

18      In an apparent concession that the objections are doomed, Defendant now attempts

19  to amend his response to reference Ariz. Rev. Stat. § 41-1604.03.

20      Defendant has waived his objections by failure to adequately state them in his

21  response to discovery and failure to argue them in response to the motion.

22      Moreover, the objections are not well taken.  The request clearly drives at the heart

23  of Count II and is plainly relevant.   And even now Defendant proffers no reason to

24  conclude that the request is not proportional.

25      The Court does find, however, that records back to January 1, 1972 goes beyond

26  the bounds of fair discovery.

27      Accordingly, Defendant must respond to the 4thRFP by providing the requested

28  documents for the period October 2012 through December 2019.

## D. EXPENSES AND SANCTIONS

The Court will, in part, grant the motion to compel.  Rule 37(a)(5)(C) provides: "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  A deadline will be set for any motion for expenses under this rule.

The Court also observes that the deadline for discovery motions has now passed. A deadline will be set for motions for sanctions for any failure to comply with this Order.

**IT IS THEREFORE ORDERED:**

(A)  Plaintiff's Motion to Compel (Doc. 120) is **GRANTED** to the extent that Defendant has through **May 14, 2020** to respond, as directed herein, to respond to Plaintiff's: First Interrogatories 1(b), 2(a), 2(b)(vi), 2(b)(vii), 2(b)(viii), 2(b)(ix), 2(b)(x), and 3; Second Interrogatory; Request for Admissions 4, 5, and 6; First Requests for Production 1, 2, 5, and 6; Second Requests for Production 2; Third Requests for Production 2, and 3; and Fourth Request for Production.

(B)  Plaintiff's Motion to Compel (Doc. 120) is **DENIED** with regard to Plaintiff's: First Interrogatories 1(a), 2(b)(iv), and 5; Requests for Admissions 1 and 7; First Requests for Production 3; and Second Requests for Production 1.

(C)  The parties have through **April 30, 2020** to file any motion for expenses pursuant to Federal Rules of Civil Procedure 37(a)(5).

(D)  Plaintiff has through **June 11, 2020** to file any motion for sanctions pursuant to Federal Rule of Civil Procedure 37 based on any failure to comply with this Order.

Dated: April 17, 2020

17-3665-120o Order 20 04 13 on Motion to Compel.docx

James F. Metcalf
United States Magistrate Judge

- 32 -